FILED

2021 Jan-05  AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONALD JOE BARBER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:20-cv-00659-MHH** |
| | } | |
| **STATE OF ALABAMA,** | } | |
| **MARK PETTWAY,** | } | |
| **CEDRIC PURDUE,** | } | |
| **BRANDON LEDLOW,** | } | |
| **JEFFERSON COUNTY,** | } | |
| **HURST TOWING & RECOVERY,** | } | |
| **INC.,** | | |
| | | |
| **Defendants.** | | |

### MEMORANDUM OPINION AND ORDER

When Jefferson County deputy sheriffs stopped Donald Joe Barber and learned that he was driving without a license, the deputies, with the assistance of Hurst Towing & Recovery, towed and impounded Mr. Barber's 1993 Ford Ranger truck.  Mr. Barber's informal efforts to recover his truck from Hurst Towing were unsuccessful, so he filed this lawsuit.  He has asked the Court to order Jefferson County and Hurst Towing to return his truck, and he seeks compensatory and punitive damages from the State of Alabama, Deputy Sheriffs Cedric Purdue and Brandon Ledlow, Jefferson County Sheriff Mark Pettway, Jefferson County, and

1

Hurst Towing.  Mr. Barber alleges violations of his federal constitutional rights and violations of his rights under state law.  Pursuant to Rule 12 of the Federal Rules of Civil Procedure, the defendants have asked the Court to dismiss Mr. Barber's claims. (Docs. 13, 17, 22).  In this opinion, the Court examines and resolves the defendants' motions.[1]

## LEGAL STANDARD

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A Rule

---

[1] The summons for Jefferson County was returned unexecuted, so the county has not appeared and has not filed a motion to dismiss.  (Doc. 23).  Because Mr. Barber is proceeding without prepayment of a filing fee, the Court must consider independently whether his claims against Jefferson County are viable.  Under 28 U.S.C § 1915(e)(2)(B), a district court that has allowed a plaintiff to proceed with a lawsuit without prepayment of a filing fee must determine whether the plaintiff has "fail[ed] to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B); *see Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278 n.3 (11th Cir. 2001) ("Section 1915(e)(2)(B)(ii) pertains to *in forma pauperis* proceedings.").  The standard for motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure applies to § 1915(e)(2)(B)(ii) screenings of *pro se* complaints. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  With respect to Jefferson County, Mr. Barber seems to assume that the Sheriff Pettway and his deputies are officers of Jefferson County.  Under the Alabama Constitution, a sheriff is a state executive officer.  ALA. CONST. Art. V, § 112 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county.").  Because Sheriff Pettway and his deputies are officers of the State of Alabama, not Jefferson County, Mr. Barber's factual allegations and legal claims pertain only to the State of Alabama, not Jefferson County.  Consequently, service of the complaint on Jefferson County would be futile.  The Court will strike Jefferson County from Mr. Barber's original and amended complaints.

Mr. Barber also lists in the caption of his initial and amended complaints 10 fictitious defendants. (Doc. 1, p. 1; Doc. 5, p. 1).  Generally, fictitious party pleading is not allowed in federal court. *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997) ("[F]ictitious party practice is not permitted in federal court.").  Therefore, the Court strikes from Mr. Barber's initial and amended complaints all claims relating to fictitious defendants.

12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of FED. R. CIV. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 26, 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met . . . the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Keene*, 477 Fed. Appx. at 583.

This is particularly true with respect to *pro se* complaints.  Courts must liberally construe documents filed by individuals who are not represented by lawyers.  *Erickson*, 551 U.S. at 94.  "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").  *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice.").  Still, the Court "may not serve as de facto counsel for a party, or … rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the factual allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015).  Therefore, the Court views all factual allegations in favor of Mr. Barber.[2]

---

[2] To give Mr. Barber the benefit of the doubt with respect to his claims, the Court has read his initial and amended complaint together and has considered Mr. Barber's remarks during the

**FACTUAL ALLEGATIONS IN MR. BARBER'S PLEADINGS**

As mentioned, Mr. Barber was driving his 1993 Ford Ranger truck when two Jefferson County deputy sheriffs pulled him over. (Doc. 5, p. 1, ¶ 7). Deputy Sheriff Purdue told Mr. Barber that his truck did not have a license plate. (Doc. 5, p. 1, ¶ 7). Instead of a license plate issued by the State of Alabama, Mr. Barber had placed on his truck a sign that read: "private automobile—not for hire." (Doc. 5, p. 2, ¶ 7). Mr. Barber explained to the deputy sheriffs that he did not need a license plate, a driver's license, or proof of insurance because he was "traveling" in an "automobile," not "driving" a "vehicle." (Doc. 5, pp. 1–2, ¶ 7). Deputy Sheriff Purdue wrote Mr. Barber three citations and called Hurst Towing to tow and impound Mr. Barber's truck. (Doc. 5, p. 2, ¶ 7). The truck remains in the possession of Hurst Towing.

Mr. Barber filed this lawsuit against the defendants and filed an emergency motion to prevent Hurst Towing from auctioning his truck for sale. (Docs. 1, 3, 41). Pursuant to 42 U.S.C § 1983, Mr. Barber alleges violations of his rights under the Fourth, Fifth, Eighth, Tenth, and Fourteenth Amendments to the United States Constitution. (Doc. 5, pp. 2–4; ¶¶ 8–21; Doc. 5, p. 5, ¶¶ 28–31). Mr. Barber also

---

hearing in this case. (Docs. 1, 5, 41). The Court cites primarily to Mr. Barber's amended complaint for the sake of simplicity.

asserts state law claims against the defendants for theft, grand theft auto, conversion of property, and racketeering.  (Doc. 5, pp. 4–5, ¶¶ 22–27; Doc. 6, p. 6, ¶¶ 32–33 ).

**ANALYSIS OF CURRENT CLAIMS**

   **1.   Fourth Amendment**

   Mr. Barber alleges that the defendants violated his Fourth Amendment rights by unreasonably seizing his truck.  (Doc. 5, p. 2, ¶ 10).  The Fourth Amendment protects the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  This federal constitutional protection applies to the states through the due process clause of the Fourteenth Amendment.  *See Ker v. California*, 374 U.S. 23, 30 (1963); *Mapp v. Ohio*, 367 U.S. 643, 655–57 (1961).  To determine the constitutionality of a search or a seizure, a district court must examine the totality of the circumstances and "'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1976)) (addressing seizures); *see also United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006) (applying balancing test to examine constitutionality of search).

   Mr. Barber accurately characterizes the impoundment of his truck as a seizure within the meaning of the Fourth Amendment.  *See Soldal v. Cook Cnty.*, 506 U.S.

56, 61–62 (1992) (towing mobile home was a seizure because it was a "meaningful interference with an individual's possessory interests in that property"). "Whether the Amendment was in fact violated is, of course, a different question that requires determining if the seizure was reasonable." *Soldal*, 506 U.S. at 62. A seizure of an individual's property is reasonable under the Fourth Amendment when the seizure is by consent, is authorized by a valid warrant, or is supported by probable cause and "an applicable warrant exception, such as exigent circumstances." *Soldal*, 506 U.S. at 66; *United States v. Babcock*, 924 F.2d 1180, 1186 (11th Cir. 2019). When Deputy Sheriffs Purdue and Ledlow stopped Mr. Barber for a traffic violation, Mr. Barber did not consent to the towing and impoundment of his truck, and the deputies did not have a warrant to tow his truck. (Doc. 5, pp. 1–2, ¶ 7). Therefore, the deputies had to have probable cause and an exception to the warrant requirement to tow and impound Mr. Barber's truck.[3]

---

[3] Although he focuses his Fourth Amendment claim on the seizure of his truck, (Doc. 5, p. 2, Count 2), Mr. Barber alleges in the "Facts" section of his complaint that Deputies Purdue and Ledlow "lacked probable cause for the [traffic] stop" (Doc. 5, p. 1, ¶ 7). This allegation is not consistent with Alabama law. By statute, a motor vehicle operated in Alabama must have a state-issued license plate or tag on the back of the vehicle. ALA. CODE § 32-6-51. Section 32-6-51 applies to everyone who operates a vehicle in Alabama, even if the driver is not a citizen of Alabama. In his complaint, Mr. Barber alleges that he was traveling in his truck when Deputy Sheriff Purdue stopped him because he did not have a license plate. (Doc. 5, p. 1, ¶ 7). The Court infers from the face of the complaint that Mr. Barber was traveling in Alabama when Deputy Purdue stopped him. Mr. Barber acknowledges in his complaint that when Deputy Purdue stopped him, he did not have a state-issued license plate. (Doc. 5, p. 2, ¶ 7). Therefore, Deputy Purdue had probable cause to stop Mr. Barber under Alabama Code § 32-6-51 (or, at the very least, reasonable suspicion).

Police officers may impound a vehicle when the law permits impoundment, and the officers act pursuant to standardized procedures and without bad faith or improper motive as when officers impound a vehicle solely to investigate suspected criminal conduct.  *Colorado v. Bertine*, 479 U.S. 367, 372 (1987).  Mr. Barber alleges that Deputies Purdue and Ledlow were not authorized under Alabama law to impound his truck.  In his complaint, Mr. Barber acknowledges that when Deputy Purdue stopped him, he did not have a driver's license, but Mr. Barber alleges that he did not need a driver's license to operate his truck, and he alleges that when Deputy Purdue had Hurst Towing impound the truck, Deputy Purdue relied on the Safe Streets Act, a statute that the Alabama legislature had repealed.  (Doc. 5, p. 2, ¶¶ 7, 8).  Neither allegation is accurate under Alabama law.

First, under Alabama law, Mr. Barber had to have a license to operate his truck.  Alabama Code § 32-6-1(a) provides that "[e]very person, except those specifically exempted by statutory enactment, shall procure a driver's license before driving a motor vehicle upon the highways of this state."  When operating a motor vehicle, drivers in Alabama must have in their possession a valid driver's license and must present the license when a law enforcement officer requests it.  ALA. CODE § 32-6-9(a).[4]  Mr. Barber has not alleged that he is exempt from the statutory

---

[4] Additionally, under Alabama law, drivers must maintain insurance on vehicles that they operate within the state.  ALA. CODE § 32-7A-16(a).  Drivers must present proof of insurance and official

obligation under Alabama Code § 32-6-1(a) to have a valid state driver's license. Therefore, Mr. Barber has not plausibly alleged that Deputy Purdue acted improperly when Deputy Purdue cited him for his failure to produce a state driver's license.

Second, although the Alabama Legislature has repealed Alabama Code § 32-5a-203, the Safe Streets Act, the deputies did not rely on the Safe Streets Act to impound Mr. Barber's truck. Under the Safe Streets Act, "a law enforcement officer [had] to impound a vehicle, regardless of ownership," when a driver was "unable to produce a valid driver's license on demand." *Norris v. City of Montgomery, Ala.*, 29 F. Supp. 2d 1292, 1294 (N.D. Ala. 1988). Although the Alabama Legislature repealed § 32-5a-203, Alabama law still authorizes police officers to tow a vehicle operated by someone who cannot produce a driver's license. Alabama Code § 32-5A-139(c)(2) authorizes police officers to "remove or cause to be removed . . . any vehicle found upon a highway when . . . [t]he person or persons in charge of such vehicle are unable to provide for its custody or removal." ALA. CODE § 32-5A-139(c)(2). A person who does not have a driver's license cannot remove a vehicle from a highway. *See United States v. Vargas*, 848 F.3d 971, 975 (11th Cir. 2017) (finding that police officer properly prohibited individuals who did not have driver's

---

registration documents when a law enforcement officer requests them. ALA. CODE § 40-12-260(b)(1)(3).

licenses from removing vehicle from side of the highway because the individuals "could not lawfully drive [the SUV] away.").

Mr. Barber alleges that his truck was towed from a highway, (Doc. 5, p. 3, ¶ 18), and his inability to provide a driver's license prevented him from removing his truck from the highway. Therefore, the deputies properly determined that Mr. Barber would violate Alabama law if he continued to drive his truck, and Alabama law authorized the deputies to have Hurst Towing impound the truck because Mr. Barber was unable to remove the truck from the highway.

Other than his contention that Deputies Purdue and Ledlow relied on a repealed statute to direct Hurst Towing to impound his truck, Mr. Barber has not alleged that the deputies had his truck impounded in bad faith or to investigate suspected criminal conduct.[5] As currently pleaded, because Alabama law authorized

---

[5] In his complaint, Mr. Barber does not indicate whether Deputy Purdue offered him the option of having a licensed driver come to the scene of the traffic stop to drive the truck home for Mr. Barber. Even if he had included such an allegation, Mr. Barber still could not state a claim absent a plausible allegation of bad faith because towing is discretionary, and an officer could reasonably exercise his discretion to impound a vehicle belonging to an individual who is not licensed to operate the vehicle.

The Court has considered whether the duration of the impoundment converts an initially valid impoundment into an unreasonable seizure. The information that Mr. Barber has provided indicates that the length of the impoundment is a consequence principally of his failure to produce "documentation" that he contends he is "not required to have" and does not state a claim (Doc. 41, p. 5), presumably a driver's license and proof of insurance. There also is an impoundment fee which Mr. Barber contends he cannot afford. (Doc. 41, pp. 3-6); *see* Doc. 5, p. 4, ¶ 24 ("Hurst Towing [] has denied the demands of the petitioner for the return of his property, namely a 1993 Ford Ranger, unless the petitioner pays a bounty of over four hundred ($400) dollars and provide certain documentation that the petitioner is not required to have, and does not have, before he can retrieve his property from their impound yard."). If Mr. Barber cannot or will not comply with Alabama law and provide a valid state driver's license and proof of insurance, then he cannot base a Fourth

Deputy Purdue to stop Mr. Barber and to have Mr. Barber's truck towed, neither Deputy Purdue nor any other defendant violated Mr. Barber's rights under the Fourth Amendment when Deputy Purdue had Hurst Towing impound Mr. Barber's truck. The Court will dismiss Mr. Barber's Fourth Amendment claim for failure to state a claim against the defendants. If he wishes and he can plead facts that would call the impoundment into question under the law that the Court has provided in this opinion, then Mr. Barber may amend his complaint to address the shortcomings in his Fourth Amendment claim. His Fourth Amendment claim, as currently pleaded, is dismissed without prejudice.

### 2. Tenth Amendment

Mr. Barber alleges that the defendants violated his rights under the Tenth Amendment by impounding his truck. (Doc. 5, p. 3, ¶ 14). The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. The Tenth Amendment addresses action by the federal government that encroaches upon state power. *See Printz v. United States*, 521 U.S. 898 (1997) (holding that the federal government cannot commandeer state officials to enforce federal law); *New York v. U.S.* 505 U.S. 144 (1992) (holding that Congress

---

Amendment unreasonable seizure claim on the duration of the impoundment of his truck because Mr. Barber cannot operate his truck to remove it from the impoundment lot.

could not command states to adopt certain laws or policies).  The Tenth Amendment is not a source of individual rights.  Rather, it reserves certain powers to the states. Because the Tenth Amendment does not protect individual rights, Mr. Barber has not stated a claim for a violation of the amendment.  Therefore, the Court will dismiss Mr. Barber's Tenth Amendment claim with prejudice.

### 3.    Fourteenth Amendment

- **Constitutional challenge based on alleged enforcement of repealed statute**

Mr. Barber alleges that the defendants violated his due process rights under the Fourteenth Amendment when Deputy Sheriffs Purdue and Ledlow towed his car pursuant to the "Safe Streets Act," a statute which was repealed effective May 1, 1998.  (Doc. 5, pp. 2–3, ¶¶ 8–9, 16).  This is a procedural due process claim.

Under the Fourteenth Amendment, a state may not deprive a person of life, liberty, or property without due process of law.  U.S. CONST. amend. XIV; *see also McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).  A "state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest [] gives rise to a federal procedural due process claim."  *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).  Before a party asks a federal court to intervene and fix a state procedure, a party first must give the state an opportunity to address and correct an alleged procedural violation.  *Cotton*, 216 F.3d at 1331. To give a state that opportunity, an individual must complain about the flawed state

procedure either in state court or in a state administrative proceeding. "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Cotton*, 216 F.3d at 1331.

*City of Los Angeles v. David* illustrates the way in which a plaintiff may assert a Fourteenth Amendment due process claim. 538 U.S. 715 (2003). In that case, an agent of the city had Mr. David's car towed because the city believed that Mr. David parked the car illegally. Mr. David paid the impoundment fee to recover his car and then requested a municipal hearing to determine whether the impoundment fee should be refunded because trees allegedly prevented Mr. David from seeing a "no parking" sign posted for the area in which he had parked his car. Mr. David waited 27 days before the city heard his request for a refund. After the city denied Mr. David's refund request, he sued the city in federal court, claiming that the city violated his right to due process because the city did not provide a prompt hearing on his refund request. The district court was able to consider the merits of Mr. David's due process claim because Mr. David alleged that the city's procedure for reviewing traffic citations was inadequate. *Id.*

Here, Mr. Barber has properly alleged a property interest in his truck and harm from what he contends is the wrongful deprivation of that property. But he has not alleged that he asked a state court or a state agency to determine whether Deputies

13

Purdue and Ledlow acted pursuant to a repealed state statute.  In a telephone hearing concerning his motion for emergency relief to prevent Hurst Towing from selling his truck, Mr. Barber explained that he has asked Hurst Towing to return his truck without paying the impoundment fee because he cannot afford the fee, but Hurst Towing refuses.  (Doc. 41, pp. 3, 5).  He explained that before Hurst Towing will release the truck to him, he must have "documentation" that he lacks, so he cannot retrieve his truck from Hurst Towing even if he becomes able to pay the impoundment charges.  (Doc. 41, p. 5).  Mr. Barber has not alleged (and did not discuss in the hearing on his emergency motion) facts that indicate that he has asked a state court to require Hurst Towing to release his truck to him.

Alabama law entitles individuals to a state court hearing to challenge traffic citations and impoundments.  Alabama Code § 12-12-51 gives state district courts exclusive jurisdiction over traffic infractions.  Each person who receives a traffic ticket may challenge the ticket in the appropriate district court.  ALA. CODE § 12-12-51.  Mr. Barber has not pleaded that he requested or attended a hearing in an Alabama district court to challenge the citations that Deputy Sheriff Purdue issued or the impoundment of his truck.  In the absence of a request for a state district court

hearing to challenge the impoundment, this federal district court cannot hear Mr. Barber's due process claim, so the Court will dismiss that claim without prejudice.[6]

- **Constitutional challenge based on alleged failure to provide care**

Mr. Barber alleges that after Hurst Towing took his truck from the scene of the traffic stop, Deputy Purdue refused to take him home or to arrange a ride home for him even though he explained to Deputy Purdue that he had recently had open-heart surgery.  (Doc. 5, pp. 3–4, ¶¶ 18, 19).  Mr. Barber alleges that Deputy Purdue endangered his life in violation of his Fourteenth Amendment due process rights.  (Doc. 5, p. 3, ¶ 18).  This is a Fourteenth Amendment substantive due process claim.[7]

Under the Fourteenth Amendment, a state generally does not have a duty to protect individuals from harm.  *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195–96 (1989).  There are two exceptions to this general rule.  First, when the government has a "special relationship" with a plaintiff—namely, when the plaintiff is in custody as

---

[6] Like the Fourteenth Amendment, the Fifth Amendment guarantees that no person may be deprived of "life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Unlike the Fourteenth Amendment which applies to state actors, the Fifth Amendment governs the conduct of federal actors.  *See French v. Barber Asphalt Paving Co*., 181 U.S. 324, 328 (1901).  Because Mr. Barber does not allege that federal officers interfered with his possession of his truck, Mr. Barber's due process claim arises under the Fourteenth Amendment, not the Fifth Amendment.  Consequently, the Court strikes from Mr. Barber's original and amended complaints claims based on alleged violations of the Fifth Amendment.

[7] Mr. Barber also alleges that Deputy Purdue violated his due process rights under the Fifth Amendment, but, as noted, Mr. Barber may not assert a Fifth Amendment claim against Deputy Purdue because the Fifth Amendment does not apply to states or state actors.

when the plaintiff is in jail—the government must provide for the plaintiff. *DeShaney*, 489 U.S. at 199–200; *see also White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999).   Second, when a state official's conduct places a person in a vulnerable position, and the person suffers harm as a result, the state official may be held liable to the person if the official's conduct was "arbitrary, or conscience shocking, in a constitutional sense." *Lemacks*, 183 F.3d at 1257 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)); *see also DeShaney*, 489 U.S. at 201.   "'Only the most egregious official conduct' qualifies under this standard, so 'even intentional wrongs seldom violate the Due Process Clause.'"   *L.S., et al. v. Scot Peterson, et al*., No. 19-14414, 2020 WL 7296744, *4 (11th Cir. Dec. 11, 2020) (quoting *Waddell v. Hendry Cnty. Sheriff's Off*., 329 F.3d 1300, 1305 (11th Cir. 2003)).

Considering first the "special relationship" avenue to a substantive due process claim, Mr. Barber has not alleged that he was in custody during the traffic stop.   Although his truck was seized during the traffic stop, Mr. Barber has not alleged facts that indicate that Deputy Purdue or Deputy Ledlow placed him under arrest.   Mr. Barber does allege that Deputy Purdue refused his request for transportation after Deputy Purdue had Mr. Barber's truck towed, but the Court cannot infer from Mr. Barber's limited factual allegations that he could not walk away from the stop or call for a ride.   Generally speaking, a driver is not in custody

16

during a traffic stop. *Berkemer v. McCarty*, 468 U.S. 420, 435–40 (1984) (acknowledging that while a traffic stop curtails an individual's "freedom of action," a brief traffic stop does not place the driver in custody because the individual does not feel "completely at the mercy of the police," and instead, merely subjects the individual to an investigative stop).

Turning to the arbitrary conduct avenue to a substantive due process claim, assuming for the moment that Deputy Purdue acted arbitrarily in the constitutional sense by refusing a ride to a 71-year old individual who had just had open heart surgery, (Doc. 5, p. 3; Doc. 41, p. 4), Mr. Barber has not pleaded that he suffered a particular harm because Officer Purdue would not give him a ride. He has not explained what steps he had to take to leave the scene of the traffic stop or what impact those steps had on his health. Without pleading that he suffered a concrete harm as a direct result of Deputy Purdue's alleged conduct, Mr. Barber cannot state a substantive due process claim under the Fourteenth Amendment.

If he wishes, Mr. Barber may amend his complaint to address these shortcomings in his substantive due process claim. His substantive due process claim, as currently pleaded, is dismissed without prejudice.

### 4.    Eighth Amendment

Mr. Barber alleges that by assessing impoundment fees as a precondition for the release of his truck, Hurst Towing has conspired with the state defendants to

17

violate his right under the Eighth Amendment to be free from excessive bail, excessive fines, and cruel and unusual punishments.  U.S. CONST. amend. VIII.  The Eighth Amendment's second clause—known as the Excessive Fines Clause— "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense."  *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (internal marks, emphasis, and citations omitted).  The Eighth Amendment's prohibition against imposing excessive fines applies to states through the Fourteenth Amendment.  *See Timbs v. Indiana*, 139 S. Ct. 682 (2019).  But the Excessive Fines Clause limits "only those fines directly imposed by, and payable to, the government."  *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 268 (1989).

Under Alabama law, the fees imposed by Hurst Towing to tow and impound Mr. Barber's truck are not imposed by the State of Alabama and are not payable to the state government.  Rather, the fees are imposed by and payable to Hurst Towing. *See* ALA. CODE § 32-6-19(c) ("The law enforcement officer making the impoundment shall direct an approved towing service to tow the vehicle to the garage of the towing service, storage lot, or other place of safety and maintain custody and control of the vehicle until the registered owner or authorized agent of the registered owner claims the vehicle by paying all reasonable and customary towing and storage fees for the services of the towing company . . . Any towing

18

service or towing company removing the vehicle at the direction of the law enforcement officer in accordance with this section shall have a lien on the motor vehicle for all reasonable and customary fees relating to the towing and storage of the motor vehicle.").  Because Mr. Barber cannot assert a claim under the Excessive Fines Clause based on the fees that Hurst Towing has assessed for towing and impoundment, the Court will dismiss Mr. Hurst's Eighth Amendment claim with prejudice.[8]

### 5. State Law Claims

- **Racketeering**

Mr. Barber alleges a racketeering claim related to the defendants' alleged enforcement of the Safe Streets Act.  (Doc. 5, p. 6, Count 13).  In his amended complaint, Mr. Barber has not indicated under what legal theory, state or federal, he brings this claim or the facts on which he relies to allege that the defendants committed racketeering or conspiracy.  In addition, as noted, Deputies Purdue and

---

[8] Even if Mr. Barber could assert an Eighth Amendment claim by alleging that Hurst Towing conspired with the state defendants to charge him for towing and stowing his truck, Mr. Barber still could not proceed with his claim because he acknowledges in his amended complaint that even if he could afford to pay the towing and impoundment fees, he would not be able to recover his truck because he cannot provide the required documentation for release of the truck.  Therefore, Mr. Barber has alleged facts that break the causal chain between the alleged Eighth Amendment violation and his alleged injury, his inability to recover his truck. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that a plaintiff cannot overcome constitutional standing requirements unless the defendant actually causes the plaintiff's particularized injury and courts can redress the injury); *Sims v. State of Fla., Dept. of Highway Safety and Motor Vehicles*, 862 F.2d 1449, 1458–59 (11th Cir. 1989) (standing requires that "plaintiff must allege personal injury fairly traceable to the challenged conduct and a likelihood that the requested relief will redress such injury").

Ledlow did not act pursuant to the repealed Safe Streets Act when they had Mr. Barber's truck towed.  Existing Alabama law authorized the impoundment of Mr. Barber's truck because Mr. Barber could not remove his truck from the highway without a valid state driver's license.  The Court will dismiss Mr. Barber's racketeering claim without prejudice because the claim is not sufficiently pleaded and because the theory on which Mr. Barber bases his racketeering claim, the enforcement of a repealed state statute, is not plausible.

- **Conversion and Theft**

Mr. Barber alleges that Hurst Towing stole his truck and conspired with Deputy Sheriff Purdue to commit grand theft auto in impounding his truck.  (Doc. 5, pp. 4–6).  Under Alabama law, taking a car or property exceeding $2,500 in value constitutes a criminal action for theft.  ALA. CODE § 13A-8-3(a)-(b).  Because this is a civil case, not a criminal matter, the Court will dismiss Mr. Barber's claim for grand theft auto.  Mr. Barber seems to mean to assert a civil claim for conversion rather than a criminal claim.

To properly state a claim for conversion under Alabama law, a plaintiff must allege a wrongful taking, wrongful detention, or misuse of his property and his right to immediate possession of the property.  *Schaeffer v. Poellnitz*, 154 So. 2d 979, 988 (Ala. 2014).  As discussed several times in this opinion, Mr. Barber is mistaken in his contention that Hurst Towing impounded his truck pursuant to the Safe Streets

Act. (Doc. 5, p. 5, ¶ 26). Therefore, he has not plausibly alleged a wrongful taking of his truck, and he has not plausibly alleged that he is entitled to immediate possession of his truck because he concedes that he has not paid the customary towing and storage fees pursuant to Alabama Code § 32-6 -19(c)(1).

Mr. Barber also alleges that at the direction of sheriff's deputies, Hurst Towing has refused his request for access to his truck so that he may retrieve personal property from the truck, "thus stealing the petitioner's personal items in violation of the law" and of several amendments to the United States Constitution. (Doc. 5, p. 5, ¶ 30; *see also* Doc. 41, p. 6). The Court already has discussed the flaws in Mr. Barber's constitutional claims. If Mr. Barber chooses to amend his complaint to try to state a valid federal constitutional claim, then he may include in his amended complaint an Alabama state law claim for conversion of his personal property in his truck. If Mr. Barber is not able to state a valid federal constitutional claim, then the Court will have to decide whether Mr. Barber may pursue a state law conversion claim in this federal court or whether the Court should decline to exercise jurisdiction over Mr. Barber's state law conversion claim concerning the contents of his truck so that Mr. Barber may pursue that claim in state court.

### 6.  Failure to Supervise and Train Claim Against Sheriff Pettway

Mr. Barber alleges that Jefferson County Sheriff Pettway failed to supervise and train Deputy Sheriffs Purdue and Ledlow and that the Sheriff is vicariously

liable for the conduct of his deputies in allegedly enforcing the repealed Safe Streets Act for years.  (Doc. 5, p. 5, ¶ 28).

In a § 1983 action like this one, a supervisory officer cannot be liable for the unconstitutional actions of other officers under a respondeat superior or vicarious liability theory.  *See Twombly v. Iqball*, 556 US. 662, 677 (2009) ("In a § 1983 suit . . . – where masters do not answer for the torts of their servant – the term 'supervisory liability' is a misnomer"); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (holding that a claim of failing to train employees under "de facto respondeat superior liability" has been consistently rejected by the United States Supreme Court); *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) ("It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior.").  Thus, Sheriff Pettway cannot be held liable for Deputy Sheriffs Purdue's and Ledlow's allegedly unconstitutional actions solely because he is their supervisor.

A supervisor may be liable for a constitutional violation when he participates in the acts causing the constitutional violation or when there is a causal connection between his acts and the violation.  *See Keating*, 598 F.3d at 762; *Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006).  Mr. Barber has not pleaded that Sheriff Pettway was on the scene of the traffic stop or knew that Deputies Purdue and Ledlow would have Mr. Barber's truck towed.  Consequently, Mr. Barber's claims

against Sheriff Pettway concern Sheriff Pettway's role as a supervisor of subordinate officers. "A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Valdes*, 450 F.3d at 1237 n.9. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1048 (11th Cir. 2014).

Mr. Barber's claim that Sheriff Pettway is liable as a supervisor for Deputy Sheriffs Purdue's and Ledlow's alleged enforcement of the Safe Streets Act fails as currently pleaded. As discussed, Mr. Barber has not plausibly alleged that the deputies acted pursuant to a repealed state statute when they had Hurst Towing impound Mr. Barber's truck. Moreover, Mr. Barber has not pleaded that there is a causal connection between an action that Sheriff Pettway took and a constitutional violation that Mr. Barber allegedly has suffered. Mr. Barber does allege that the deputies acted under an official policy or custom of enforcing a repealed statute for more than 22 years, (Doc. 5, p. 6, ¶ 26), but he has not plausibly alleged a causal

23

connection between the alleged improper enforcement of the Safe Streets Act for years and his alleged injury because he has not plausibly alleged that Deputy Purdue or Deputy Ledlow had his truck impounded pursuant to a repealed state law.  Again, a current state statute, Alabama Code § 32-5A-139(c)(2), authorized Deputies Purdue and Ledlow to instruct Hurst Towing to impound Mr. Barber's truck.

Additionally, Mr. Barber's has not sufficiently pleaded his claim that Sheriff Pettway failed to train the deputy sheriffs.  "[I]nadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference."  *City of Canton*, 489 U.S. at 388.  To show deliberate indifference, a plaintiff must plead that a sheriff "knew of a need to train and/or supervise in a particular area and the [sheriff] made a deliberate choice not to take any action."  *Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998).  To meet this burden, a plaintiff may allege either a "widespread pattern of prior abuse" indicative of additional constitutional violations if training is not provided, *Gold*, 151 F.3d at 1351, or a plaintiff may allege that the need for training is so obvious that a failure to train would result in constitutional violations, *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).  Allegations of widespread abuse or obvious lapses in training place a supervisor like Sheriff Pettway on notice of the need to provide additional training to the officers he supervises.

To the extent that Mr. Barber may wish to assert a failure to train claim concerning Deputy Purdue's alleged failure to give him a ride after he had Mr. Barber's truck towed, Mr. Barber has not alleged facts that would place Sheriff Pettway on notice of a need to train his deputies in this area. The same is true with respect to Mr. Barber's allegation that deputies instructed Hurst Towing not to allow him access to the contents of his truck. Because Mr. Barber has not plausibly alleged the Sheriff Pettway's deputies impounded Mr. Barber's truck under the Safe Streets Act, he cannot use the alleged continued enforcement of that repealed act as a basis for a failure to train act related to his traffic stop. The Court will dismiss Mr. Barber's failure to train claim against Sheriff Pettway without prejudice.

**INSTRUCTIONS FOR A NEW AMENDED COMPLAINT**

If he wishes, within 30 days, Mr. Barber may amend his complaint to address the deficiencies in his claims. If he amends his complaint, Mr. Barber may not include the State of Alabama as a defendant in his new amended complaint. The doctrine of sovereign immunity shields the State of Alabama from lawsuits in federal court. The jurisdictional doctrine is expressed in the Eleventh Amendment of the Constitution of the United States which provides: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. CONST. amend. XI. Courts have extended the

protection afforded to states under the Eleventh Amendment to suits against states by their own citizens where the states have not consented to those lawsuits. *Employees v. Missouri Public Health & Welfare Dep't,* 411 U.S. 279, 280 (1973) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)).[9] Therefore, Mr. Barber may not pursue claims against the State of Alabama in an amended complaint.[10]

Mr. Barber also may not assert a claim against the Jefferson County Sheriff's Office or against Sheriff Pettway in his official capacity for damages. Under Alabama law, "the sheriff's department is not a legal entity subject to suit," so Mr. Barber may not state a claim against the sheriff's department. *Ex parte Haralson*, 853 So. 2d 928, 931 (Ala. 2003).

---

[9] The extension is not an expansion of state immunity; it is a recognition that state sovereignty is a fundamental principle embedded in the original United States Constitution. *Alden v. Maine*, 527 U.S. 706, 728-29 (1999). There are two exceptions to state sovereign immunity. First, a state may expressly waive immunity. *Carr*, 916 F.2d at 1524–25. Second, Congress, when acting pursuant to its enforcement powers under Section 5 of the Fourteenth Amendment, may eliminate state immunity for certain types of conduct. *Carr*, 916 F.2d at 1524–25. Neither exception applies here. The State of Alabama has not waived its immunity. *See* ALA. CONST. art. I, § 14 ("[T]the State of Alabama shall never be made a defendant in any court of law or equity."). And Congress has not abrogated state immunity for constitutional rights. *See Carr*, 916 F.2d at 1525 ("Congress has not abrogated Eleventh Amendment immunity in section 1983 cases.").

[10] As explained in footnote 1, if he files an amended complaint, Mr. Barber may not name Jefferson County as a defendant.

Lawsuits against sheriffs are a bit more complicated.  As noted earlier in this opinion, under the Alabama Constitution, a sheriff is a state executive officer.  ALA. CONST. Art. V, § 112 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county.").  When a plaintiff sues a state employee for actions taken in his official capacity, "a question arises as to whether that suit is a suit against the State itself," such that sovereign immunity would bar the lawsuit.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  A federal district court may not exercise jurisdiction over state officers sued in their official capacity for damages or for retroactive injunctive relief for violations of federal law, and a federal district court may not exercise jurisdiction over a claim against a state official sued in his official capacity for a violation of state law.  *Pennhurst*, 465 U.S. at 98-122.  When a lawsuit concerns a state actor's official conduct, "a suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court," and a claim for injunctive relief based on a violation of state law must be brought in state court.  *Pennhurst*, 465 U.S. at 122.  Thus, this Court may not exercise jurisdiction over federal or state law claims against Sheriff Pettway in his official capacity for damages.  And, to the extent that Mr. Barber asks the Court to

27

enjoin Sheriff Pettway in his official capacity based an alleged violation of state law, this Court may not exercise jurisdiction over the claim.

On the other hand, "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct." *Pennhurst*, 465 U.S. at 102-03.  When a state official's conduct violates the United States Constitution, a federal court may enjoin the official from continued unconstitutional conduct to secure "the superior authority of that Constitution." *Ex parte Young*, 209 U.S. 123, 159-60 (1908).[11]  In addition, sovereign immunity does not protect state employees from damages claims against the employees in their individual capacities. *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).[12]

---

[11] The Alabama Supreme Court has recognized that the bar on suits against the state in Article I, § 14 of the Alabama Constitution does not extend to actions brought to enjoin a sheriff's conduct.

> Section 14 immunity is not applicable when an action is brought: (1) to compel state officials to perform their legal duties; (2) to compel state officials to perform ministerial acts; (3) to enjoin state officials from enforcing unconstitutional laws; (4) to enjoin state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act.

*Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987); *see also Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996).

[12] When sued in his individual capacity, a sheriff may raise the defense of qualified immunity. This is an affirmative defense that the sheriff must assert. *Lockhart v. Franklin*, 777 Fed. Appx. 387, 391 (11th Cir. 2019) (For state actors, "immunity under § 14 'is an affirmative defense for which the burden of proof rests with those asserting it.'") (quoting *Hickman v. Dothan City Bd. of Educ.*, 421 So.2d 1257, 1259 (Ala. 1982)); *see also Matthews v. Alabama A&M Uni.*, 787 So. 2d 691, 695 (Ala. 2000) (For state employees seeking the protection of sovereign immunity, "[i]mmunity is an affirmative defense that the defendant must plead and prove."). These rules

**CONCLUSION**

For the reasons stated above, the Court will dismiss Mr. Barber's claims.  The Court dismisses Mr. Barber's Fifth, Eighth, and Tenth Amendment claims and his state law theft claim with prejudice.  If Mr. Barber intends to pursue his other claims, he must amend his complaint as instructed above within 30 days.  The Defendants will have 14 days to respond after Mr. Barber's second amended complaint is submitted. The Court denies as moot Docs. 3, 6, 15, 25, 26, 30, 33, and 39.

**DONE** and **ORDERED** this January 5, 2021.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

apply equally to claims against Deputy Sheriffs Purdue and Ledlow.  *Carr*, 916 F.2d at 1526 (explaining that under Alabama law, "a deputy is legally an extension of the sheriff.").